### 15049.  STEVENS v. THE STATE.

A conviction of the offense of receiving stolen goods was not authorized by the evidence.

       DECIDED DECEMBER 5, 1923.

Indictment for receiving stolen goods; from Fulton superior court—Judge E. D. Thomas.  August 23, 1923.

From the evidence it appears that Harry Stevens, the defendant, conducted a clothes-pressing business in the City of Atlanta, and that on a Saturday night and until an early hour on Sunday morning John Bagwell, George Tumlin, and Hubert Puckett were at the "pressing club" of Stevens, and, in pursuance of a plan then made by them, Tumlin and Puckett went from there to Hanna's store, broke into it, and stole fourteen cartons of cigarettes, some cigars, and $8.50 in money from the store, and that the packages of cigarettes were taken to the pressing club and put on a counter, and the money divided.  Bagwell was convicted of the burglary, Tumlin escaped, and Puckett (a boy sixteen years old) was the only witness for the State on the trial of Stevens, except the owner of the stolen property.  Puckett, in his testimony, said:  "The trip to the store was planned about two o'clock in the morning at Harry Stevens' pressing club. . . The pressing club is partitioned off. We were in the front part of the pressing club when the trip to

the store was planned. . . Harry told us he would not do it if he was us." After testifying as to the burglary by Tumlin and himself, the witness said: "Both of us carried the cigarettes down to the pressing club. We put them on the counter and went back down to the store, to set it on fire. Harry Stevens was there when we got back. . . Harry was in the back of the pressing club. I saw him, but we did not talk to him. . . Harry did not ask us anything, and we did not tell him anything. He did not see where we had put the cigarettes. . . We left all the cigarettes we got out of the place at Harry's place. I never got any of them from there. . . We left them on a wooden counter, just a little shelf. It is the place where he receives his clothes when they bring them in to press. . . Harry didn't say anything about the cigarettes. . . George Tumlin said that they hid the cigarettes in the roof. . . Harry was in the back, and me and George was in front. . . $8.50 in money was stolen at the store that night. George Tumlin, John Bagwell, Harry Stevens, and myself spent it. . . The money was divided into four parts, and I got some. . . The pressing club was a place where they worked late at night. Harry kept the club open until late on Saturday night. . . He was busy with his pressing business. . . Harry was pressing clothes. . . We first began to talk about the burglary at two o'clock in the morning. Harry told us he would not do it, advised against it. . . I don't know of my own knowledge that Harry Stevens ever got any of the cigarettes. George told me later that he had hidden the cigarettes at some place about the pressing club." "We didn't tell him we got the money at that time. . . I didn't give Harry Stevens any part of the $8 in money. George Tumlin had the $8. I did not see Harry get any of the money. He never told me that he got any of it. He never told me that he got any of the cigarettes, and I never saw him get them. . . I got a fourth of the money. . . I took the money out of the cash register; I took my part and gave the rest to George Tumlin. There was nobody there when I did that. . . When we left to go down to the store Harry already knew we were going to rob it. That was the time he told us he would not do it. I never seen Harry get none of the stuff that come out of the store." The defendant, in his statement at the trial, said that he knew nothing about the cigarettes, cigars,

or money brought to his place, that he "was in the back and asleep."

*Fred E. Harrison, Louis H. Foster,* for plaintiff in error.

*John A. Boykin, solicitor-general, E. A. Stephens, R. H. Pharr,* contra.

LUKE, J. The defendant was convicted of the offense of receiving stolen goods. A strong suspicion of his guilt is created by the evidence, but in our judgment the evidence was insufficient to authorize his conviction. It was therefore error to overrule the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*